FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ MAR 23 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ASBESTOS & LEAD REMOVAL
CORPORATION and GEORGE
KOURKOUNAKIS,

                  Plaintiffs,

- against -

EDISON SEVERINO, in his capacity as
President of LABORERS INTERNATIONAL
UNION OF NORTH AMERICA LOCAL 78,
ET AL.,

                  Defendants.
----------------------------------------X

**MEMORANDUM DECISION AND ORDER**

CV-06-5949 (BMC) (MDG)

**COGAN, District Judge.**

This is a RICO case against a labor union local arising out of a series of violent acts allegedly authorized by union leaders and committed by union members in order to force the plaintiff to recognize the union for collective bargaining purposes. Presently before me is plaintiffs' motion for leave to file a second amended complaint and defendants' motion to dismiss, which is directed at that proposed complaint. The motion to amend is granted and the motion to dismiss is granted in part and denied in part as set forth below.

## BACKGROUND

Plaintiffs' second amended complaint alleges that at various times beginning in the Fall of 2003 and sharply escalating in October 2006, Laborers International Union of North America Local 78 ("Local 78"); its Business Manager, Edison Severino (sued as its President); Local 78 members Fabian Derewiecki, Nguren Rivera, Angel Rivera, Carlos

Severino, and other John Doe defendants, undertook a series of illegal and improper acts, seemingly intended to extort plaintiff Asbestos & Lead Removal Corporation ("ALR") and its President, George Kourkounakis, into entering a collective bargaining agreement with Local 78. The most serious of these are breaking Kourkounakis' hand with a billy-club (for which Derewiecki has been arrested, although he denies responsibility); trying to run him over with a car; vandalizing ALR vans and employee vehicles; menacing an ALR employee with a vehicle on the Long Island Expressway; and spray painting and throwing bricks at Kourkounakis' house.

The second amended complaint contains three counts. Count I is a RICO count against Local 78, accusing it of being an "enterprise" engaged in a pattern of racketeering activity. The predicate acts are extortion under the New York Penal Law and the Hobbs Act, 18 U.S.C. §1951. Count II is a collection of state law intentional tort claims, stated only against particular defendants who are alleged to have committed each act. Count III is a RICO claim against Edison Severino and individual Local 78 employees.

## DISCUSSION

I. Standard of Review

A court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46; 78 S. Ct. 99, 102 (1957); Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004). In deciding whether a complaint states a claim, the court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002).

II. The RICO Claims

    A. Hobbs Act Violation

The primary ground on which defendants attack the RICO claims is that the Hobbs Act does not apply in the context of a labor dispute, and thus an alleged Hobbs Act violation cannot be a predicate act under RICO.

Local 78's argument is premised on U.S. v. Enmons, 410 U.S. 396, 93 S.Ct. 1007 (1973). There, the Supreme Court affirmed dismissal of a criminal indictment under the Hobbs Act where a union was alleged to have destroyed company property during a lawful strike. Because there was a legal object of the strike – to obtain a new collective bargaining agreement at higher wages – the Court found that violence to obtain that lawful end was not subject to indictment under the Hobbs Act. The Court noted that: "the Nation has witnessed countless economic strikes, often unfortunately punctuated by violence. It is unlikely that if Congress had indeed wrought such a major expansion of federal criminal jurisdiction in enacting the Hobbs Act, its action would have so long passed unobserved." Id. at 410, 93 S.Ct. at 1015.

Plaintiffs, in turn, point out correctly that courts have narrowly applied Enmons despite some broad language in the decision. Plaintiffs rely on A. Terzi Productions, Inc. v. Theatrical Protective Union, Local No. One, I.A.T.S.E., AFL-CIO, 2 F. Supp. 2d 485 (S.D.N.Y. 1998), in which Judge Sotomayor held that the Hobbs Act did apply to violent acts committed by union members seeking to obtain a union contract, where the union had not been recognized as the bargaining representative for employees and there was no strike out of which the violence arose. Since it is a fundamental precept of labor law that a union may not demand employer recognition in the absence of support from a majority

of employees, the Court held that the violence was not part of an effort to obtain a "lawful objective," was subject to Hobbs Act prosecution, and constituted a predicate act under RICO.

Faced with this argument, Local 78 asserts that Terzi was a fashion industry case, whereas the present case arises in the construction industry. The difference, Local 78 argues, is that §8(f) of the National Labor Relations Act, 29 U.S.C. §158(f), permits a union to seek to enter a collective bargaining agreement with an employer in the construction industry, as opposed to other industries, even without majority employee recognition. Section 8(f) provides that: "It shall not be an unfair labor practice ... for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged ... in the building and construction industry," even if those employees have not elected the union as their bargaining agent. Local 78 concludes that since it was authorized by this section to enter into such a "pre-hire" agreement with ALR, it was seeking a lawful objective, and thus, violence in connection with that objective is excluded from the Hobbs Act under Enmons.

At this point, the parties' positions bog down into an argument over whether arguably inconsistent NLRB decisions concerning the right of a union to picket to enforce a pre-hire agreement make Local 78's attempt to organize ALR "lawful." Compare NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO, 434 U.S. 335, 98 S. Ct. 651 (1977) ("Higdon") (deferring to Board's position that a minority union cannot picket to enforce a pre-hire contract) with John Deklewa & Sons, Inc v. NLRB, 843 F.2d 770 (3rd Cir. 1988) (upholding Board's

4

revised interpretation of the NLRA as not permitting employer to repudiate pre-hire agreement). This debate misses the point.

The parties have not entered into a pre-hire agreement. The decisions of the NLRB, like those that formed that basis of Higdon and Deklewa, as to whether a pre-hire agreement is terminable at will or what actions a union may take to enforce an existing pre-hire agreement, thus are of no relevance in construing the scope of the phrase "lawful objective" in Enmons. Here, defendants assert that the allegedly unlawful acts were intended to force a pre-hire agreement in the first instance.

NVE Constructors, Inc. v. NLRB, 934 F.2d 1084 (9th Cir. 1991), is more closely on point. There, the Ninth Circuit affirmed a decision of the Board that an uncertified union did not violate the NLRA when it picketed for less than 30 days to force a pre-hire agreement. Specifically, the Board held that "we do not believe that recognitional and organizational picketing by a minority union in the construction industry is prohibited by Section 8(b)(7)(C) of the Act if the picketing meets the time limitations set forth in that section." Id. at 1085.

According to plaintiffs' complaint, Local 78's activities took place over a period of more than two years, taking their conduct outside of the 30 day time limit for "recognitional and organizational picketing" in the construction industry. However, even excluding the earlier conduct and focusing only on the allegations of violence beginning in October 2006, I am not satisfied at this stage of the case that Enmons extends to the acts alleged in the complaint.

Enmons involved a strike by a union recognized by the employees as the bargaining agent in order to obtain higher wages following the expiration of a prior

collective bargaining agreement – a labor tactic that was not only lawful, but almost hallowed as the primary legal bargaining tool that a union may employ in those circumstances. The Supreme Court was clearly concerned about the criminalization, or at least the "chilling," of this essential union labor tool if the Hobbs Act was read to unleash prosecutors to indict based on incidental violent acts that attended a carefully protected activity, the right to strike. To include such acts, the Court held, would "put the Federal Government in the business of policing the orderly conduct of strikes." Enmons, 410 U.S. at 411, 93 S.Ct. at 1015. Enmons itself did not reach the question of what activity besides striking for higher wages constitutes "legitimate labor ends," Terzi, 2 F. Supp. 2d at 505 (citing Enmons, 410 U.S. at 407, 93 S. Ct. 1007), but courts have been careful to apply Enmons restrictively, limiting it almost exclusively to the strike context. See Terzi, 2 F. Supp. 2d at 505-08 (collecting cases).

Significantly, none of the material facts in Enmons is present here. There is no strike. There is no expired collective bargaining agreement. There is no apparent effort, at this stage, to get higher wages for workers. There are no facts demonstrating or even suggesting support among ALR employees for union representation. There is only an alleged demand for union recognition based on several incidents of violence.

True, unlike in Terzi, defendants were not required to achieve authorization from a majority of employees in order to picket for a pre-hire agreement, and in that sense, §8(f) affords defendants a "lawful" basis to demand recognition. However, not only did defendants long exceed the time period provided in the Act for them to employ coercive tactics to achieve recognition, but there is no allegation in the complaint that the violent acts alleged were incidental to bona fide bargaining in the context of a labor dispute. To

apply Enmons, where the strike to obtain higher wages was unambiguously protected activity and the violence was clearly incidental to it, to this case would have the tail wagging the dog. It would require a holding that as long as violent acts occur between a labor union and a company where a pre-hire agreement was possible, there are no circumstances in which the Hobbs Act would prohibit any level of violence. I am not prepared at this stage to extend Enmons to shield defendants from liability for numerous incidents of illegal conduct simply because this is a construction industry case and they assert that the conduct was in the course of seeking a pre-hire agreement.

Of course, this is a 12(b)(6) motion, and it may develop when all of the facts are placed before the Court that the alleged misconduct in this case was incidental to lawful organizing activity. However, for purposes of this motion, the allegations of the complaint do not fall within the exemption from the Hobbs Act recognized in Enmons.

B. Garmon Preemption

The weight of authority in this Circuit has rejected defendants' argument that the NLRA preempts plaintiffs' RICO claims because the claims are essentially unfair labor practices, an argument derived from San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773 (1959). I agree with this authority, and hold that Garmon preemption applies only to state law claims, not federal RICO claims. See Terzi, 2 F. Supp. 2d at 502-04 (collecting cases).

C. Continuity

I find that for the limited purpose of surviving a motion to dismiss, plaintiffs have sufficiently alleged open-ended continuity of the scheme at issue here to meet the standard of H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893

7

(1989). (The alleged conduct spans over two years, but I decline to decide whether this is substantial enough for closed-ended continuity.) Specifically, I find that the allegations establish a threat of long-term racketeering activity because they involve explicit and implicit threats of long-term conduct.

We are not dealing here with a couple of incidents of violence during a union struggle. The second amended complaint recites numerous incidents, starting over two years ago and greatly escalating in October 2006. Some of them involve explicit threats that confirm the alleged goal: "You should join the union;" "You just crossed the line by calling the police; I will investigate where you live and break your windows." The inference of relationship is apparent and indeed not challenged. The inference of continuity may be reasonably drawn given both the number and nature of incidents, and the fact that the goal of the alleged scheme has not yet been achieved. See GICC Capital Corp. v. Technology Fin. Group, 67 F.3d 463 (2d Cir. 1995); Norstar Bank v. Pepitone, 742 F. Supp. 1209, 1211-12 (E.D.N.Y. 1990) ("when the predicate acts only last a few weeks in actuality but at the time of their occurrence threaten future criminal activity, the continuity requirements is met").

I am not dissuaded from this conclusion by Local 78's assertion that since the filing of this action, there have been no further incidents, or by the fact that Local 78 has fired one defendant and suspended another based on its verification that one of the acts alleged in the second amended complaint did, in fact, occur. First of all, this is a Rule 12(b)(6) motion and I am confined to the face of the complaint. See, e.g., Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991); see also Welch Foods, Inc. v. Gilchrist, 1996 WL 607059, at *6 (S.D.N.Y. Oct. 18, 1996) ("the threat of

8

continuity in the context of an open-ended racketeering activity must be viewed at the time the racketeering activity allegedly occurred"). Indeed, if I were permitted to draw an inference from post-filing occurrences, I might conclude that Local 78 was in control of the actions that occurred and caused them to cease once suit was filed, but I will not draw that inference either. Second, it would set a dangerous precedent to base the continuity determination on a cessation of hostilities immediately after the filing of a RICO case, as it might suggest a strategy on the part of a defendant to "lay low" until a case was dismissed.

I therefore find that the complaint satisfies the requirement of continuity necessary under RICO.

III. Individual Liability

Defendants seek dismissal of the individual Local 78 defendants pursuant to §6 of the Norris-LaGuardia Act, 29 U.S.C. §106. That statute prohibits vicarious liability against any union, officer, or member, requiring "clear proof" of "actual participation," "actual authorization," or "ratification" of tortious acts of union members. Although defendants assert that the statute requires dismissal of the claims against all of the individual defendants, they discuss only the allegations against Edison Severino, Local 78's Business Manager.

Section 6 is phrased in terms of proof, not pleading requirements, and thus the issue is whether Severino has notice under Fed.R.Civ.P. 8(a) of what he is being sued for. Paragraph 7 of the second amended complaint, which alleges that Severino "is being sued in his capacity as Local 78's president ... [u]pon information and belief, Mr. Severino controlled all actions of Local 78 and is, therefore, jointly and severally liable for all acts

committed on Local 78's behalf," sounds like vicarious liability by its use of the word "control"; however, the complaint goes on to plead participation by Severino in the acts alleged in Counts II and III. Likewise, the complaint alleges actual participation by the other individual named and John Doe defendants. Even if "clear proof" of actual participation or authorization is ultimately lacking, plaintiffs' allegations against the union and the individual defendants are sufficient to survive the motion to dismiss.

IV. State Law Claims

Much of defendants' reply focuses on the dismissal of plaintiffs' state law claims. Although plaintiffs could have pled each element of their claims more artfully, the second amended complaint includes a section that outlines "Illegal Activity Against ALR and its Employees," listing 11 "Events" in detail. Although the claims themselves are presented in conclusory fashion, the allegations contained in each of the "Events" sufficiently states a claim for assault and battery, intentional infliction of emotional distress, trespass, conversion and defamation.

The complaint fails, however, to state a claim for tortious interference with business relations. To prevail on such a claim under New York law, a party must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 171 (2d Cir. 2004). Plaintiffs have not alleged any actual or prospective contractual relationship with a third party. Events 9 and 10 of the complaint allege that defendants littered asbestos debris, removed a warning sign, and removed a

notebook containing ALR's work permits in such a manner that ALR was, or could have been, fined by the Department of Environmental Protection (it is not clear from the complaint whether a fine ever issued). However, the description of these Events and the conclusory allegation in paragraph 99 that defendants took these measures "so as to cause termination of ALR contracts" is insufficient to state a claim for tortious interference.

Therefore, defendants' motion is granted as to the tortious interference section of Count II.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to plaintiffs' claim for tortious interference with business relations, and otherwise denied.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
March 23, 2007